Judge Mills
delivered the opinion of the court.
In the month of August, 1802, the county court of Barren granted to Abner Bourne a certificate for 400 acres of land in said county, by metes and bounds therein described. At the June court, 1806, Bourne applied to said court to remove, or rather withdraw, said certificate; on which application the court made the following order, to wit:—
“On the motion of Abner Bourne, leave is granted him “to remove a certificate, No. 502, granted by this court for “400 acres, he having made satisfactory proof that the “same was taken by a prior claim.”
On the 16th May, 1808, Bourne assigned this certificate to John Monroe, the plaintiff in error, and Alexander Adair, who, on the 25th March, 1815, made with the surveyor of Barren county, an entry of 90 acres, part of said certificate, calling “to begin at the second corner of a 400 acre “survey in the name of Newton Curd, thence N, 12 W, “50 poles, to a stake in a line of J. Baldwin, assignee of “H. Baldwin; thence with his line S, 87 W, 364 poles, to “his corner; thence S, 12 W, 50 poles, to the 3d corner of “said Curd; thence binding on his line to the beginning.”
A survey having been made thereon on the 22d April, 1815, Adair assigned his interest in the plat and certificate to Monroe, who caused the same to be registered. On the following day Walker, the plaintiff in error, made a similar entry in calls and quantity, on a removed certificate of the same character, and having procured a survey to be made prior in date to that of Monroe, and registered his plat and certificate, Monroe commenced his caveat in the circuit court to prevent the emanation of Walker’s grant, which Walker defended; and on the trial that court sustained the entry of Monroe as valid, and gave judgment vacating the claim of Walker; to reverse which judgment this writ of error is prosecuted
By the assignment of error, not only the notoriety and identity of the calls of Monroe’s entry are questioned, but the authority of the surveyor of the county to permit a relocation of the removed certificate in the pocket of the individual, without its position having been fixed by the county court, when it was withdrawn, is put in issue. To the last point the attention of this court has been particu *403 larly called, as first to be determined. For if this be against the plaintiff in caveat, it is wholly immaterial what kind of entry he may have, or what kind of claim his adversary holds in the contest.
The determination of this question has required the examination of a voluminous and multifarious system of legislation in this country, whereby the vacant lands have been disposed of, and involves the construction of several acts. In making this examination, the court has been satisfied that the claims granted previous to the year 1800, usually called commissioners’ certificates, depend on their own peculiar laws, and are not to be blended with the county court system, which commenced at that period, further than the express words of particular subsequent laws may involve them, if there be any such, and whether there be any such, it is not necessary now to enquire. For the claim of the plaintiff in caveat, and defendant in error, originated finder the laws permitting the county courts to grant certificates, and must be tested by them exclusively.
The first act, giving base to the claim in question, was passed the 20th Dec. 1800, and entitled “an act for settling and improving the vacant lands of this commonwealth.” By this act the actual settler might locate 400 acres, and a claimant, under former laws, but 200—and to make the appropriation he must “apply to the court of the county in which such settlement was made; and upon proving to them that he had actually made such settlement, he was entitled to a certificate for the quantity of land, to which he might be entitled under the act, including such settlement." The act then proceeds thus—“In which said certificate shall be contained a special location, describing, as accurately as may be, the land contemplated to be included in said certificate.” Upon his obtaining this certificate, within twelve months after its date, he was to produce it to the register, and on payment of the state price, he was entitled to a warrant: “In which warrant,” adds the act, “shall be contained the location as specified in the certificate ” This warrant was then directed to be located within six months thereafter with the surveyor of the county in which the lands lay, “in the words of the certificate.” Thus far it is evident the claim was fixed and immovable on the certificate as its base, and neither the register in the warrant, or surveyor in the entry, was authorised to depart from the certificate, or in the least to change the position of *404 the claim. The next act necessary to be noticed, was passed the 21st December, 1802, entitled “an act for the relief of settlers of this commonwealth in certain cases ’’ By the second section of this act, by the bare production of the certificate to the surveyor, he was authorised to survey “the whole or any lesser quantity called for in said certificate” without any previous entry; but in surveying he was restricted to the land called for in the certificate, and was allowed to include no other. This survey was to be recorded; but neither the survey or record thereof was to be valid until the warrant was obtained and filed—meaning that warrant which recited the certificate on its face.
The third act involved in this contest, was approved the 23d December, 1803, entitled “an act authorising the surveyors" to enter and survey on the county court certificates, and for other purposes.” The first section authorised persons holding certificates granted by the act first before recited, to enter and survey the whole or any part of the land called for in his or her certificate. And after recording the survey, and registering it, and paying the state price thereon, he was entitled to a patent. This act dispensed with warrants, and authorised the surveyor not only to survey, but to enter the land. But he is still expressly restricted to the land described in the certificate. And in his office no change of ground could yet be made.
The fourth and last act more immediately affecting this controversy, was approved the 15th December, 1804, entitled “an act concerning settlement rights south of Green river,” 3 Litt. 195 The second section of this act is in the following words:
“That where any claim heretofore granted, or hereafter “granted, may have been, or shall hereafter be, or any part “thereof, entered on any military or appropriated land, on “satisfactory proof being made, the county courts shall permit such claims so entered, or such part as shall be entered “on any military or appropriated land, to be withdrawn and “located on any unappropriated land. Provided, however, “that nothing in this act shall be so construed as to authorise any person to relinquish any claim granted under any “of the former laws, and locate the same under the law by “which the price of the land is to be reduced to twenty “dollars per hundred acres. But wherever a claim shall “hereafter be removed under this act, the same price shall *405 ‘‘be chargeable thereon that was chargeable on the original “claim, proposed to be removed.”
Locations on removed certificates under the laws appropriating the vacant lands of the commonwealth, must be made with the county court before they are entered with the surveyor.
Under this section the important questions arise, with whom was the relocation of the land to be made, with the county court, or with the surveyor of the county? Was the withdrawing party bound to obtain a new certificate from the county court, on withdrawing the old one, operating as the exclusive guide to the surveyor in entering and surveying the claim? or was he allowed to put the withdrawn certificate in his pocket, after making a withdrawal only, and at his ease and convenience to enter it with the surveyor, and then choose a different spot? If the former is the case, then it would be an appropriation, an existing location before entry. If the latter construction prevails, then before the entry made, his claim had not the qualities of an existing appropriation. It was located no where, and dwindled into a mere authority to appropriate any where, by entry with the surveyor, or at pleasure. From a sound construction of the acts in question, an authority to receive and make the location must be inferred either to the county court or the surveyor. If it belongs to the former, the entry in question is void: if to the latter, its merits, on comparing it with the law, must be enquired into.
Some considerations dehors the acts in question, but arising out of the system of legislation pursued by the legislature in other acts on the subject, may be, and are, entitled to weight in deciding in favor of the exclusive authority of the county courts to make the location. The legislature had previously retained a lien upon the lands for the state price, a withdrawal, and retaining the authority to an appropriate, for many years, and in this instance, for nine years, defeated that lien, and it could only attach upon the relocation. The claims were directed to be sold for the instalments due. No sale could be effected upon a claim withdrawn, and relocated no where. If it was sold to individuals or the state, it was not a claim, but a bare authority to have one. It can hardly be conceived that the legislature intended these coercive measures to be thus defeated.
Again, the county court proceedings were, for the most, public. Then persons were presumed to attend who were interested either in obtaining or defeating claims. They proceeded at fixed periods, in the face of the county, and were authorised to decide contests between a claimant and a settler, upon a spot intended to be claimed by another. *406 They could not, consistent with the generel code, permit the claimant, about to remove, to relocate on the head of the actual settler, and the settler might have some opportunity to repel such an attempt in the county court. But to meet his adversary in the private retreats of a surveyor’s office, he had no probable opportunity—nor if such opportunity should be afforded, had the surveyor the power of protecting him, by determining in his favor and refusing the location.
Further, certificates granted by the county court had their requisites prescribed. They were to contain a special location, describing, as accurately as may be, the land, contemplated to be included. By this the surveyor was conclusively bound, and by these requisites the validity of the claim was to be tried. If the surveyor is allowed to receive an entry without a certificate, he has no rule to go by. The certificate does not exist to guide him, and the acts have prescribed no rules by which such an entry should be made or measured. This leads the court to enquire more minutely, whether the words of the act in question, last recited, will bear this interpretation. The claims allowed to be withdrawn, were those “entered” on prior claims. If this means an entry with the surveyor, the claim of the plaintiff in caveat cannot be sustained; because it had not the attributes of a claim that could be withdrawn, for it had never been previously entered before it was withdrawn. But if it means locations made in court, which the court conceives it does, then the claim of Bourne was a subject of removal. But who was to admit a relocation? The act answers the question—the authority which allowed the withdrawal. The court, by the terms of the act, was not only to permit it to be withdrawn, but also to permit it to be again located on any unappropriated land. Hence this court conceives that the act in question only renewed the power to the county court, in certain events, to change the position of a claim which they had once granted, and to fix again its position as they had done at first, and that the statutes in question, all relating to the same subjects, construed as acts in pari materia, did design that the position of every claim should be fixed in the county courts, and no authority of private entry with the surveyor was intended; and that the mischiefs arising out of such a practice by conflicting claimants was cautiously guarded against, and that it was intended that the surveyor should be bound by the *407 grant of the county court, and not be allowed to admit anomalous locations at the will of the applicant, under the adopted system.
It is evident, therefore, if this construction is correct, that the entry of the plaintiff in caveat is void; and that the judgment of the court below must be reversed, and judgment there rendered accordingly. For although the claim of the defendant is of the same nature, as he has the position of a defendant, no judgment can be rendered against him.